## FRANK GOLIN v. THE STATE.

### No. 955.    Decided January 27th, 1897.

1. **Murder—Evidence as to Lawlessness of the Locus in Quo.**

On a trial for murder, evidence that the neighborhood in which the parties lived was "a lawless and tough place," is inadmissible where the case is not one of circumstantial evidence tending to show some other person than accused did the killing; and where there was no evidence pertinently tending to show some theory consistent with his innocence or inconsistent with his guilt.

2. **Same—Evidence as to Money Found on Premises—Hearsay.**

On a trial for the murder, by a husband of his wife, where the State's theory was that he killed his wife that he might get her property; testimony of the temporary administrator that, shortly after the killing, an agent of his found several hundred dollars on the premises of deceased, is inadmissible where the witness knew nothing of the finding of said money except from hearsay.

3. **Same—Evidence—Certified Copy of an Unprobated Will—Notice of Filing.**

On a trial by a husband for the murder of his wife, in order to get possession of her property, it is admissible, upon the question of motive, for the State to introduce in evidence a certified copy of a will devising her estate to defendant, which, though not probated had been filed with the Clerk of the County Court; where the evidence showed defendant had knowledge of the will and its provisions, and where, in connection with the certified copy, the same was proved up as an examined copy, by the witnesses to the original will. And, under provisions of Art. 2314, Rev. Stat., a certified copy of an instrument being admissible in like manner as the original, proof of its execution could be made as in case of the original; and, it could be used in evidence, by proof of its execution, on the trial without the necessity of filing the same among the papers three days before trial and giving notice thereof to the opposite party.

**4. Same—Certified Copies of Instruments as Evidence.**

Under Art. 2312, Rev. Stat., which is applicable also in criminal cases, deeds and other instruments which are permitted or required to be recorded, to be admissible in evidence, must have been filed among the papers at least three days before the trial with notice of filing to the opposite party or his attorney. Held: That certified copies of a deed and power of attorney executed by defendant which have not been so filed and are unaccompanied by an affidavit of loss of the original, or that they could not be procured and no notice has been given to produce by, nor any effort shown to procure them from the proper custody, are not admissible in evidence against the defendant.

**5. Same—Impeachment of Witness—Charge Limiting and Restricting Evidence.**

Where a witness testifies that he did not tell another witness that he did not have nor did know where the last will of the deceased was. Held: He could not be contradicted as to such testimony; and where the court has admitted such contradictory testimony for the purpose of impeachment of the witness, it is error to fail to restrict the evidence solely for the purpose of impeachment.

**6. Same—Invalid Will—Motive.**

On a trial for murder, by a husband of his wife, to get possession of her property devised to him by her will, if there is evidence tending to show that defendant knew of the execution of said will and believed it was valid though it may not have been so because not signed by one of the witnesses in the presence of the testatrix, still it was admissible for the purpose of showing motive for the homicide on the part of the defendant.

**7. Same—Self-Serving Declarations of Defendant.**

On a trial for murder, the statements of defendant to a witness to the effect, that, when he learned he was charged with killing his wife, he fled because he was afraid he would be mobbed, are inadmissible because hearsay and self-serving declarations.

**8. Same—Declarations of Defendant.**

Declarations of defendant four years before the homicide, to a witness that, "Before you came in here and married me (witness having performed the marriage ceremony) I was a poor man, but look at my property now," was irrelevant and immaterial, and should not have been admitted.

**9. Bill of Exceptions to Admitted Evidence—Practice on Appeal.**

Where no bill of exceptions has been saved to the introduction of evidence, the court, on appeal, will not pass upon the question of its admissibility.

APPEAL from the Criminal District Court of Harris. Tried below before Hon. E. D. CAVIN.

Appeal from a conviction for murder in the second degree; penalty, a life term in the penitentiary.

Mrs. Sofia Golin, wife of appellant, was murdered, at her home in the city of Houston, on the 31st day of May, 1895. She and appellant were married in 1891, by Justice Schwander. At the time of the marriage, she was a widow and owned property in Harris County valued at fifteen or twenty thousand dollars—appellant was poor, owned no property.

Justice Schwander testified on the trial that he performed the marriage ceremony; that after the marriage, when he started home, as appellant was escorting him to the gate, he said to him, "Judge, before you came in here I was a poor man, but look at my property now," and named a couple of houses. [This evidence was objected to by defend-

ant.] Deceased was, perhaps, more than twenty years older than appellant. At the time of her death, she was between 70 and 80 years of age, was very infirm, and had been so for some time; was partially blind and had to be led by some one when she walked.around the place.

On the 9th day of April, 1895, Mrs. Golin made her last will and testament and devised all her property and estate to appellant. The subscribing witnesses to this will were Alfred Wisby, who wrote the same, and one W. R. Day. Both these parties saw Mrs. Golin sign the will, and Wisby subscribed it as a witness; but Day, the other witness, did not affix his name to it in her presence, but at the office of Wisby. It seems that appellant knew of the execution of the will and its provisions. This will was retained by Wisby until after the death of Mrs. Golin. It was filed in the office of the County Clerk on the 8th of August, 1895; and the State was permitted, over defendant's objections, to read a certified copy of the same in evidence at the trial.

About 8 o'clock p. m., on the 31st of May, appellant returned home, and had evidently been drinking. His wife, and a Mrs. Wilkins and her little boy, about five years of age, were the only parties on the premises. Mrs. Wilkins, who was a servant, took appellant's horse into an adjoining lot to feed him. When she returned to the house she found Mrs. Golin lying upon the floor weltering in her blood, which was flowing from a number of wounds on her head. Golin had left. In a short time Golin returned with a Mr. Fisher. Golin did not enter the house. Fisher struck a light, went in and found Mrs. Golin lying on the floor insensible. These parties did not move her, but went off, leaving her. Fisher called up the police, and, when they came, Mrs. Golin was still breathing, but unconscious. She was removed to the hospital, where her wounds were dressed by the physician; and he testified, as did another physician, who also examined her, that she had at least twelve and perhaps fifteen or twenty cuts upon her head, which appeared to have been made with a knife; that her skull was not fractured. · She died the next morning from the effects of these wounds. The police officers searched the Golin premises, and they found, in a feed room, a pair of overalls or pants, and a pair of boots, which appellant had on the evening just before the killing, and also a knife; these articles had blood stains upon them, and were put in evidence at the trial. At the coroner's inquest Fisher testified that appellant had told him, when they went to the house, that deceased fell and hurt herself, but that when he told him, "No, that won't do; somebody gave her a lick," Golin said: "We had a little row, and I hit her a few licks." The officers of the law searched diligently for Golin, but could not find him.

W. J. Love testified, in substance, that he was an attorney at law, and had been attorney for Golin before the homicide. · That after the homicide he went, at appellant's solicitation, to New Orleans to see him. That on the 21st day of June, 1895, appellant executed a general plenary power of attorney to one James Wilkinson, of New Orleans; to dispose of all his interest in the estate of Sofia Golin, the deceased; and on

the 13th day of August, 1895, appellant, by said Wilkinson, his attorney in fact, executed a deed of conveyance to H. Masterson, in consideration of $10,000, for forty-eight acres of land in Harris County, and about seven acres, more or less, in the city of Houston, it being the real estate belonging to and devised by Sofia Golin by her will to appellant. Some time after this appellant was arrested in the city of St. Louis, Mo., and was brought from there back to Texas by James H. Prewitt.

It was in evidence that defendant and his wife had had quarrels about her property, and the management of it.

The theory of the State was, that appellant killed his wife that he might get possession of the property. To refute this idea, the defense proposed to prove by Prewitt, the temporary administrator of the deceased's estate, that a party who had been placed by him in possession of the premises to watch over and protect the same, had told him about finding six or eight hundred dollars in gold coin on the premises, which he delivered to Prewitt; this evidence was, on objection by the State, excluded by the court. The court also excluded the evidence of a witness for the defense, to the effect that the locality where the killing occurred was "a lawless and tough place."

*Jones & Garnett, George Underwood, John A. Kirlicks* and *J. A. Fagan*, for appellant.—The court erred in not permitting the defendant to prove by the witness, Quinn, the reputation and character of the neighborhood where deceased was found beaten on the night she received the injuries from which she died. The witness, Quinn, had he been permitted, would have testified that "it was a lawless and tough place," and that "the deceased, a short time before the night in question, while at home in her house, was violently beaten and assaulted by unknown parties." This testimony was competent and material as a circumstance to be submitted to the jury, in view of the fact that the whole evidence was circumstantial, and none other relied on by the State for a conviction.

The court erred in not allowing the defendant to prove by the witness, J. H. Prewitt, that shortly after the killing one of his agents and watchmen found on Mrs. Golin's premises $600 or $700 in gold coin; the witness Prewitt, having been permitted by the court to testify for the State that when he took charge of Mrs. Golin's premises, as temporary administrator, shortly after the killing, he found about the house a small sum of money and other valuables, and that this watchman had been placed in charge of the house by witness the day after the killing. This evidence was competent, and sought by the defendant to rebut the claim of the State, that defendant had killed his wife for the purpose of getting her property.

The court erred to defendant's prejudice in admitting in evidence, over defendant's objection, a certain writing purporting to be a certified copy of the last will and testament of Sofia Golin, deceased, of date

April 9, 1895, and certified under the certificate and official seal of the
Clerk of the County Court of Harris County, Texas, as such, and to be
a true and correct copy of said will, as the same appeared on file in the
office of said clerk, purporting to be signed by Sofia Golin in German,
in and by which said will the said Sofia Golin purports to bequeath
and devise to Frank Golin, defendant in this case, all and singular the
property belonging to her, including two (2) tracts of land situated in
Harris County, Texas, and making the defendant executor without bond;
and certified copy purporting to be signed by Alfred Wisby and W. R.
Day as witnesses, and purporting to have been filed in the office of the
Clerk of the County Court of Harris County on August 8, 1895, be-
cause:

(a)   There was no proof offered showing, or tending to show, before
or at the time the same was offered and permitted to be read in evidence,
that the said pretended original will had ever been executed in the man-
ner and by the formalities required by law.

(b)   There was no proof offered showing that Sofia Golin had ever
made the original will, of which the paper writing purports to be a cer-
tified copy.

(c)   Because said certified copy was not the best evidence of the sup-
posed will or of its execution, there being no proof offered showing that
the original thereof was lost, destroyed or was in the possession of de-
fendant, or was not in existence even.

(d)   Because the original of said pretended certified copy had never
been established as the will of said Sofia Golin by any witness who
saw her sign the same as a matter of fact; nor had the protended origi-
nal will been admitted to probate or been proven as Sofia Golin's will.

(e)   · Because the best evidence of said will would not be said certified
copy, but the will itself, or a certified copy of the record of the proper
court wherein said will was proven.

(f)   Because said purported certified copy of said pretended will had
not been filed among the papers of this case, wherein the same was of-
fered and proposed to be used as evidence, for the period of time re-
quired by law and due notice thereof given to the defendant or his at-
torneys; nor had the same ever been filed at all among the papers of this
case before it was read in evidence; nor was it so filed until after same
had been read to the jury in full over defendant's objection.

(g)   Because the State had not shown, before said certified copy was
offered and read in evidence, nor at any time thereafter was it shown,
that defendant knew of the execution, existence or contents of said will.

The court erred in admitting in evidence, over defendant's objections,
those two certain paper writings, one purporting to be a certified copy
under the official seal and certificate of the Clerk of the County Court
of Harris County, from the records of his office, purporting to be a true
and correct copy of a certain power of attorney, with its certificate of
acknowledgment, as the same appeared of record in the office of said
clerk of date June 21, 1895, and purporting to have been made by de-

fendant Frank Golin to one Jas. Wilkinson, wherein and whereby the defendant purports to have empowered and authorized said Wilkinson to sell and convey all of defendant's real and personal property situated in Harris County, Texas; and the other paper writing purporting to be a certified copy of a certain deed from the defendant, Frank Golin, by his attorney in fact, Jas. Wilkinson, to one H. Masterson, wherein and whereby the defendant purports to convey to said H. Masterson certain real estate situated in Harris County, Texas, along with a large amount of personal property, bearing date the 13th day of August, 1895, together with a certified copy of the certificate of acknowledgment of said deed, the same being duly certified as a true and correct copy under the certificate and official seal of the Clerk of the County Court of Harris County as the same appeared of record in his office.

The original instruments of which the papers read in evidence were certified copies, were each and all such instruments as are permitted or required by law to be recorded, and therefore none of them were admissible in evidence unless the certified copies had first been filed for three days among the papers of this case in which it was proposed to use same for three days and due notice thereof given to defendant or his attorneys. It is not pretended that this had been done. While this objection to the introduction of these papers fully stated in the bills of exceptions is conclusive against their admissibility, there are numerous other objections disclosed in the bills of exceptions Nos. 3, 4 and 5, which are equally valid. It is submitted that the rulings of the court in admitting these certified copies in evidence, over defendant's objections, show an utter disregard of the rules of evidence and of the rights of defendant as well. Art. 726, Code Crim. Proc.; Johnson v. State, 9 Tex. Crim. App., 249; Allison v. State, 14 Tex. Crim. App., 403; May v. State, 25 Tex. Crim. App., 114; Sayles' Civ. Stat., Art. 2257; Morrow v. State, 22 Tex. Crim. App., 239; Graves v. State, 28 Tex. Crim. App., 354.

*J. M. Gibson, Nat. P. Jackson* and *Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at a life term in the penitentiary; hence this appeal. The evidence introduced on the part of the State was circumstantial, and tended to show that the appellant, on the night of the 30th of May, 1895, assaulted and struck his wife, Sofia Golin, a number of blows with some character of instrument, inflicting wounds upon her from which she died in a few hours. The proof showed that the parties had been married about four years, and that the deceased was possessed of considerable property in her own right, mostly real estate, in and near the city of Houston, worth from ten to twenty thousand dollars. She was about 70 years of age, and the appellant was about 45 or 50 years old. The theory of the State was that the motive

actuating the defendant in the homicide was gain; that is, to acquire
and own the property of his deceased wife. We do not believe the
court erred in excluding the evidence of Quinn, offered by the appel-
lant, to prove that the neighborhood where the deceased and the appellant
lived, and where she was killed, was at that time "a lawless and tough
place." There was no evidence tending to connect any one else, by circum-
stances, with the commission of the offense. Such evidence is only admis-
sible in a case of circumstantial evidence, where, in connection with the
proof offered, the circumstances tend to show that some other person may
have done the killing (see Kunde v. State, 22 Tex. Crim. App., 65; Henry
v. State [Tex. Crim. App.], 30 S. W. Rep., 802); or where there is some
evidence pertinently tending to show some theory consistent with the de-
fendant's innocence, or inconsistent with his guilt (see Murphy v. State,
36 Tex. Crim. Rep., 24. In this case there was no such tangible theory
presented with the excluded evidence, such as to render it admissible,
We do not believe the court erred in excluding the testimony of Prewitt
as to the $600 or $800 in money held as a part of the estate of Sofia
Golin. The mere fact that he held such money would not be significant,
unless his testimony would show that said $600 or $800 was found by
him on the premises of Sofia Golin. As we understand the explana-
tion of the court, this money was found by another witness who was
present, and the witness Prewitt knew nothing of the finding of said
money on the premises of Sofia Golin, except by hearsay. On the
trial, the State introduced in evidence a certified copy of the will of Sofia
Golin. The action of the court in connection therewith is indicated by
the following bill of exceptions, to-wit: "The State offered in evidence a
a certain paper writing puproring, to be a true and correct copy of the
last will and testament of the deceased, Sofia Golin, certified as such
copy, under the certificate and official seal of the Clerk of the County
Court of Harris County, Texas, to-wit, E. F. Dupree, as the same appeared
on file in his office, of date of the 9th day of April, 1895, and purporting
to be signed by the deceased, Sofia Golin, in German, in and by which
said instrument the said Sofia Golin purports to bequeath and devise
to the defendant, Frank Golin, all and singular the property belonging
to her, including two tracts of land or real estate situated in the County
of Harris, in the State of Texas, and making the said defendant, Frank
Golin, sole executor of said instrument, without bond or security. The
said certified copy purports to be witnessed by Alfred Wisby and W.
R. Day, and the original of which purports to have been filed on the 8th
day of August, 1895, in the office of the clerk of Harris County, Texas.
To the reading of which certified copy of said instrument the defendant
at the time, in open court, objected, because: (a) There was no proof
showing that said will had ever been executed in the manner and by the
formalities required by law; (b) because there was no evidence that the
deceased, Sofia Golin, had executed or made said written instrument
or will; (c) because said certified copy of said instrument was not the
best evidence of said will, or its purported execution, it not having been

shown that said purported will was lost, mislaid, or destroyed, or was not in existence, or that it was in the possession of the defendant; (d) because said purported will had never been established as the last will and testament of the said Sofia Golin, by any witness who saw her sign it as a matter of fact, nor had the same been admitted to probate or proved as the last will and testament of the said Sofia Golin; (e) because the best evidence of the establishment and proof of said will was not said certified copy of the same, but would be the record of the proper court wherein said instruments are established, or a certified copy of the record of such proof and establishment of such purported will; (f) because said paper writing and purported certified copy of said pretended will had not been filed among the papers of the case of the State of Texas against Frank Golin, wherein it was offered and proposed to be used, for the period of time required by statute, and due notice thereof given to the defendant of the purpose upon the part of the State to use said purported certified copy of said will as evidence against him in said trial; (g) and because said certified copy of said purported will had not been filed among the papers of this cause, nor had any notice been given thereof to this defendant, and the same was read to the jury, over the objection of the defendant, before the same was filed among the papers of said cause; (h) because it was not shown before said instrument was introduced in evidence, or before or after, at any stage, of the trial, that the defendant had any knowledge of the execution of the will or of its contents. But all of defendant's said objections were by the court overruled, and the said paper writing or certified copy, as the substance of the same is set out hereinbefore, was read in full by the State to the jury, to which action of the court in overruling defendant's objections, and permitting the said certified copy of said purported will to be read in evidence, the defendant excepted."

It will be noted that the paper here offered and allowed in evidence was a writing purporting to be a true and correct copy of the last will, etc., of Sofia Golin, certified as such copy, under the certificate and official seal of the Clerk of the County Court of Harris County, Texas. As explained by the court, this was permitted, in connection with the testimony of Alfred Wisby and W. R. Day, who testified as to the execution of the said will; and we are referred to their testimony in the statement of facts. By referring to the testimony of W. R. Day, we ascertain that he saw the deceased sign said will; that he did not sign it in the presence of the deceased, but signed it afterwards, in the office of Wisby. Wisby testified that he wrote the will, and saw the deceased sign it as her will, and that he then signed it in her presence. The paper bears date April 9, 1895, and is a will in proper form, and gives and bequeaths to her husband, Frank Golin, the homestead tract of land, consisting of five acres, more or less; also, forty-eight acres, more or less, in the Austin survey, situated on the Montgomery road, about two and one-half miles from the courthouse—both properties being in Harris County—in fee simple, to be disposed of as he may

wish.   It also bequeaths to said Frank Golin the residue of the property of the testatrix, both real and personal, wherever it may be, and appoints him sole executor, without bond; and further provides that no other action should be had in the County Court in relation to the settlement of said estate, except the probate and record of said will and return of an inventory and appraisement and list of claims.   The will was filed August 8, 1895, by E. T. Dupree, Clerk of the County Court of Harris County, by his deputy, Dixon.   Attached to the certified copy of the will is a certificate of the County Clerk of Harris County to the effect "that the above and foregoing is a true and correct copy of the last will of Sofia Golin, deceased, as the same appears on file in my office."   The certificate was dated September 17, 1895.   It will be noted that there was no certificate of probate offered with this will.

Article 5352, Rev. Stat., 1895, provides:  "Every such will, together with the probate thereof, shall be recorded by the Clerk of the County Court in a book to be kept for that purpose, and certified copies of such will and the probate of the same, or of the record thereof, may be recorded in other counties, and may be  used in evidence as the original might be."   Article 5351 provides:   "All original wills, together with the probate thereof, shall be deposited in the office of the Clerk of the County Court of the county wherein the same shall have been probated, and shall there remain, except during such time as they may be removed to some other court, by proper process, for inspection."   Article 2312 provides:   "Every instrument of writing which is permitted or required by law to be recorded in the office of the Clerk of the County Court, and which has been or may be so recorded after being proven or acknowledged in the manner provided by the laws in force at the time of its registration, shall be admitted as evidence without the necessity of proving its execution; provided, that the party who wishes to give it in evidence shall file the same among the papers of the suit in which he proposes to use it, at least three days before the commencement of the trial of such suit, and give notice of such filing to the opposite party or his attorney of record; and unless such opposite party, or some other person for him, shall, within three days before the trial of the cause, file an affidavit stating that he believes such instrument of writing to be forged.   And whenever any party to a suit shall file among the papers of the cause an affidavit stating that any instrument of writing, recorded as aforesaid, has been lost, or that he can not procure the original, a certified copy of the record of any such instrument shall be admitted in like manner as the original could be."   This was not a probated copy of said will offered in evidence, but, as we understand it, a certified copy of the will, which appears to have been deposited with the County Clerk for some purpose. It may have been in his custody pending a suit for the probate thereof, but about this the record does not inform us.   If such was the case, on a proper certificate of the fact, the certified copy might have been intro-

duced under Art. 2314, Rev. Stat., 1895.  Article 2314 reads:   "If suit be brought on any instrument or note in writing filed in any suit brought thereupon in any other court of this State, a certified copy of such instrument or note in writing, under the hand and seal of the clerk of the court in which the original may be filed, shall be admitted as evi-dence in like manner as such original might be; but if the defendant shall plead and file an affidavit under oath that such original instrument or note in writing has not been executed by him, or by his authority, the clerk of the court having the custody of such original shall, on being subpœnaed as a witness, attend with the same on the trial of the cause."

The clerk of said court, if said will was filed in the County Court of Harris County (this trial being in the Criminal District Court of Har-ris County), might have been compelled to attend on the Criminal Dis-trict Court in person with the instrument.  See, Morrison v. Bean, 22 Texas, 554.  The original will, unprobated, could be used in evi-dence by proof of its execution, and without the necessity of filing the same among the papers in the cause, and giving the opposite party notice.  And, pending this probate, the statute provides that a certified copy, under the hand and seal of the clerk of the court in which the original may be filed, shall be admitted in evidence in like manner as such original might be.  Before it was probated and proved up by the subscribing witnesses thereto, the statute would appear to make a certified copy admissible, and that it could be proved up as an examined copy by the witnesses who signed the original will.  Day, one of the witnesses in this case, it appears, signed the will in the absence of the testatrix; and there might be some question in such case whether or not the will could be probated upon such testimony.  But, although this may have been an abortive will, still, if appellant is shown to have had knowledge thereof, and to be connected with its execution, it would, nevertheless, be admissible in evidence, upon proof that the testatrix signed it as her will and testament, in the presence of the witnesses, with knowledge on the part of the beneficiary, and the evidence of belief on his part that he was entitled to take under it.  It is objected in the bill of exceptions that appellant had no knowledge of the execu-tion of this will; but we do not understand this to be so certified in the bill itself, and, when we recur to the statement of facts, there is some testimony tending to show knowledge on his part of the execution of the instrument prior to the homicide.  There is testimony subsequent to the homicide that he acted and assumed to take the property of the testatrix under the will.

The State was permitted, over the appellant's objection, to introduce a certain paper writing, purporting to be a true and correct copy of a power of attorney from appellant, Frank Golin, to one James Wilker-son, duly certified as such, by and under the certificate and official seal of the Clerk of the County Court of Harris County.  The court over-ruled the various objections urged by appellant; and, in explanation of said bill, says that "said power of attorney was introduced in connec-

tion with the testimony of W. J. Love, who testified that he was pres-
ent when Golin executed the original power of attorney, and that said
certified copy was a correct copy of said original, and testified further
in relation thereto, as is fully set out in the testimony of said Love."
Said power of attorney appears to have been executed in New Orleans,
State of Louisiana, on the 21st of June, 1895, by Frank Golin; is
acknowledged before Upton, a notory public in and for the Parish of
Orleans, by said Frank Golin; was filed for record in Harris County on
September 12, 1895; and was recorded on September 13, 1895, in the
record of deeds of Harris County.    Said power of attorney purports to
authorize James Wilkerson to act as the attorney in fact of said Frank
Golin as to all of the property which he owns in his own right, and
which he was hereafter to be entitled to receive, as surviving husband
or heir at law of Sophia Golin, and as to all property, etc., to which he
may have any right, title, or interest, legal or equitable; to sell and'
convey and make deeds to such real estate; to execute mortgages, etc.
The State also introduced a certified copy of a paper writing purporting
to be a true and correct copy of a certain deed from defendant, Frank
Golin, by his attorney in fact, James Wilkerson, to one H. Masterson,.
duly certified as a true and correct copy of said deed, under the certifi-
cate and seal of the Clerk of the County Court of Harris County; said
deed purporting to have been executed on August 13, 1895, and convey-
ing to said Masterson, in consideration of $10,000, two certain tracts
of land situated in Harris County, Texas (one of said tracts known as
the "Peters Place," containing about seven acres of land; and the other
containing about forty-nine acres of land, known as the "Germantown
Tract"), giving a full description of the land by metes and bounds, also
a large amount of personal property, embracing choses in action, debts,
and claims of all kinds and descriptions; said deed purporting to convey
all property, of every kind and description, to which the said Frank Golin
might be entitled in his own right, or as heir or devisee of Sofiia Go-
lin, deceased.    The court in admitting said testimony, explains "that
said witness, W. G. Love, testified with reference to said deed as is fully
set out in his testimony in the statement of facts in this case, reference to
which is made."    Love testified in this connection:    "I was practicing
law in this county last May, and have since.    I was attorney for de-
fendant during part of that time.    James Wilkerson is a lawyer in New
Orleans.    He is the one mentioned in the document shown me [power
of attorney].    I did not file that document for record.    I had the orig-
inal in my possession.    Don't know who filed it.    The original of the
power of attorney was in my possession.    I did not file original power
of attorney for record.    I wrote the original deed of which the State
shows me a certified copy for identification."    [Copy of deed from Mas-
terson to Wilkerson here shown, and identified as a copy of the deed
prepared in his office.]

Among other objections urged to these instruments are:    "(1) The.
State did not file said papers among the papers in this cause, nor ex-

hibit to the defendant or his attorneys until the same was offered in evidence. (2) Said paper had not been shown to be examined copies of said deed or power of attorney. (3) Nor had it been shown that the originals were lost or mislaid or destroyed, or in the possession of the defendant, and therefore said certified copies were not the best evidence. (4) There was no proof offered by the State to show or tend to show that the defendant, Frank Golin, had ever executed the purported originals of said certified copies. (5) Because said purported certified copies of said supposed originals had not been filed in the papers of the State of Texas against Frank Golin, in which it was proposed to use said copies for a period of time required by law and notice given defendant; the same not having been filed among the papers in said cause, before or at the time the same were offered in evidence. This power of attorney and deed were material evidence against the appellant, as showing motive on his part to commit the homicide, and that defendant's flight from the State was permanent. The statute before quoted (Art. 2312, Rev. Stat., 1895) is a rule providing for the introduction of such evidence in civil cases. Our statute (Art. 764, Code Crim. Proc., 1895) on this subject provides: "The rules of evidence prescribed by the statute law of this State in civil suits shall, so far as applicable, govern also in criminal actions when not in conflict with the provisions of this code, or of the Penal Code." And it has been held in a number of cases in this court that said rule of evidence prescribed in said Article 2312 in civil suits is applicable to the admissibility of the same character of evidence in criminal cases. See, Johnson v. State, 9 Tex. Crim. App., 249; Allison v. State, 14 Tex. Crim. App., 403; Morrow v. State, 22 Tex. Crim. App., 239; Graves v. State, 28 Tex. Crim. App., 354. In some of the cases before this court, as in forgery and theft of cattle, where the forged instrument or bills of sale were offered, the instrument was directly involved, and could not be considered collateral. But in Allison v. State, supra, while the bill of exceptions is not shown, it was evidently upon a collateral issue. If it were a new question, and the evidence appeared to be collateral, as merely to show motive, we should feel constrained to regard the whole matter as governed by the rules of evidence, and that a paper writing, when offered in evidence, must be either admissible at common law, or under some statute of our State. If we have a statute, of course we are controlled by that. In Wiggins v. Fleishel, 50 Texas, 57, it is said that in a civil suit a deed is not per se admissible in evidence. To render it admissible, it must be recorded, and, after record thereof, it must be filed in the cause in which it is to be used as evidence, at least three days before the trial of the cause, and notice of such filing given to the opposite party, or it may be rendered admissible by proving its execution in the manner required at common law. Now, in this case the original power of attorney and deed were not offered in evidence at all, but certified copies, under the seal of the county clerk. In such case an affidavit should have been filed, stating that the original instruments, recorded

as aforesaid, had been lost, or that they could not be procured, and then such certified copies could be admitted in like manner as the orig· inal could be. If the certified copies had been on file the necessary three days, and notice thereof given to the opposite party, the affida· vit could have been made at any time. See, Ross v. Kornrumpf, 64 Texas, 390. Moreover, there was no notice whatever given to produce these papers, nor any effort shown to procure them from the proper custody. None of the steps in fact appear to have been taken which rendered these certified copies admissible in evidence. The explanation of the court referred to the testimony of Love, and, when we recur to Love's testimony, he does not make them admissible under any rule of law that we are aware of. He does not even testify that he saw them executed. Concede, however, that the certificate of the judge is to the effect that he saw the power of attorney executed, yet this testimony would not render the certified copy of the power of attorney admissible under the evidence in this case. Nor do we understand that he proved that they were examined copies, compared by him with the originals. As stated before, they were introduced for the purpose of proving motive on the part of the appellant to commit the homicide, and they were material in that respect; and, if proper steps had been taken, doubtless this evidence could have been introduced. But these necessary steps to render this character of testimony admissible at all were not taken in this case. Said deed and power of attorney should have been excluded on the objections urged thereto by the appellant.

Appellant, in his sixth bill of exceptions, contends that the court committed an error in allowing the State to prove by the witness, J. H. Prewitt, over his objections, that he inquired of Wisby, and demanded of him the will of Sofia Golin, and that said Wisby told him (witness) that he did not have it, nor did he know where said will was. The court, in explaining this bill, says "that the evidence was only offered and admitted for the purpose of contradicting the witness Wisby, who had denied that he had told Prewitt that he did not have said will, or did not know where it was." It occurs to us that this testimony was immaterial, and if, as stated by the court, said Wisby testified that he did not tell said Prewitt that he did not have said will, and did not know where it was, he could not be contradicted on such testimony. Moreover, the court failed to limit this evidence to the purpose of impeachment. Appellant also objected to the evidence offered by the State by the witness, W. R. Day, to prove by said witness that he went to the house of the deceased, Sofia Golin, with said Wisby (the other witness to the will), and saw a writing purporting to be the will of said Mrs. Sofia Golin, and that he signed the same as a witness, but not in the presence of the deceased or at her house, but at another and different place. The objection to this testimony was that the statute requires the witness to sign the will in the presence of the testatrix, and what took place as to the will was simply between Wisby and said witness, and that no evidence had been offered on the trial, prior to or at the time

said witness was allowed to so testify, to show that the defendant knew of the existence or contents of said purported will, because the will itself was the best evidence as to its execution and contents. As stated before, it may be that the said will was not the subject of probate by the witness who had signed it, not in the presence of the testatrix; but if there was evidence in the case tending to show that defendant knew of the execution of said will, and believed it was a valid will, though it may not have been so, still it was admissible for the purpose of showing a motive on his part for the homicide. We do not understand the bill to certify that appellant had no knowledge of its execution, or that the evidence failed to show that he recognized and believed said will to be a valid will. Of course, if he knew nothing of the existence of such a will, was not connected with it—no evidence to show that he made any claim under it—it should not have been admitted; but, as stated, the bill does not show this. In regard to the bill in which appellant claimed that the court committed an error in not allowing the witness, Love, to state that defendant told him in New Orleans that the reason he left Houston was because he was afraid he would be mobbed; that the neighborhood in which the homicide occurred was a tough and lawless place; and that, when the defendant learned that he had been charged with the crime of killing his wife, he fled from Houston, because he was afraid he would be mobbed—we hold that, in order to have rendered said testimony admissible, it should have been shown (which was not done) that the State had brought out from said Love some part of the conversation relative to this matter; otherwise, the declaration or statement of the defendant to Love would be merely hearsay and self-serving. In our opinion, the evidence of Schwander as to what the defendant remarked some four years before the homicide, when he was first married to his wife, to the effect that defendant said to witness, "Before you came in here, and married me (said witness having performed the marriage ceremony), I was a poor man, but look at my property now," etc., was irrelevant and immaterial, and ought not to have been admitted. There is no bill as to the introduction of the testimony of the witness, Ross, contradicting the witness, Fisher. This testimony may not have been admissible, but, as no objection appears to have been urged to it, we do not pass upon that question. As admitted, we can see no harm inuring to defendant from the court's restricting said testimony for the purpose of contradicting the witness, Fisher. We have examined the charge of the court, and it appears to be correct. We do not believe the court erred in refusing to give a charge on manslaughter, under the evidence in this case. For the errors discussed, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*

[NOTE.—A motion for rehearing filed in behalf of the State was overruled without a written opinion.—Reporter.]